IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.                                       CIV 07-0225 JP/KBM
                                          CR  06-0944 JP

JUAN GASPAR-PEREZ,

    Defendant-Movant.

# PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

In this habeas matter under 28 U.S.C. § 2255, the Court appointed the Federal Public Defender to represent Defendant. Because the parties could not resolve the matter informally, an evidentiary hearing was required. *See Docs. 10, 13.*[1] Prior to the evidentiary hearing, I held a status conference to make preliminary rulings on certain issues so that the evidentiary hearing would not have to be repeated or continued. *See Doc. 17.* Since the October 25, 2007 evidentiary hearing, Defendant filed his affidavit, and I received a copy of the plea transcript

---

[1] Unless otherwise noted, citations to "Doc." are the documents filed in this civil action.

from the Virginia conviction that was considered in the federal proceeding.[2]

I find that no further briefing or testimony is necessary, and will briefly restate my prior rulings. I recommend that Defendant's ineffective assistance of counsel claim with regard to sentencing be denied, but that it be granted with regard to failure to appeal. Consequently, I recommend that Senior District Judge James A. Parker vacate and reenter the judgment and sentence so that Defendant can take an appeal.

*Defendant's Motion To Amend Petition Is Timely*[3]

Because Defendant did not appeal, his conviction became final for statute of limitations purposes ten days after entry of the amended judgment and sentence – August 4, 2006. Consequently, he had until August 6, 2007 to file his petition. *See, e.g., United States v. Perez,* CR 06-944 JP (Doc. 20, entered 7/25/06); *United States v. Hurst,* 322 F.3d 1256, 1260-61 (10th Cir. 2003); *United States v. Penn,* 153

---

[2] The affidavit was filed as an attachment to Document 23 in this civil action, and counsel for the United States will file a copy of the Virginia transcript as soon as it receives the hard copy of the court reporter's certificate page with her original signature.

[3] Motions under § 2255 are often referred to as "petitions" and, as is my typical practice, I do so here. *See, e.g., Medberry v. Crosby,* 351 F3d 1049, 1058 (11th Cir. 2003*); Purvis v. Wiley,* 2007 WL 196550 (10th Cir. 2007); *United States v. Duran-Salazar,* CIV 06-940 (Doc. 11 at 1 & n.1

Fed. Appx. 548, 550 n.1 (10th Cir. 2005).[4] With some five months to spare, Gaspar-Perez signed his *pro se* petition on February 26, 2007 and filed it with the Clerk on March 5, 2007. *See, e.g., Doc. 1* at 7 (corresponding envelope not filed by Clerk,); *United States v. DeClerck,* 2007 WL 3104596 at * 4, n.3 (19th Cir. 2007) (not invoking mailbox rule where petitioner did not affirmatively demonstrate compliance); *United States v. Durst,* 2007 WL 172209 at *1 (10th Cir. 2007) (assuming petitioner was entitled to benefits of prison mailbox rule).

A request for a two-month extension to respond was granted to the United States, and the response was filed June 8, 2007. Nineteen days later, I filed my proposed findings which included a recommendation that counsel be appointed for Gaspar-Perez. *Doc. 7.* It was not until Friday, July 20, 2007, however, that Judge Parker adopted my recommendation and appointed the Federal Public Defender to this case.

Counsel entered her appearance July 26, 2007, with eleven days left on the statute of limitations. He, as I, expected that the parties would first try to resolve the matter informally. *See Doc. 10* at 2. A formal substitution of counsel for the United States was made August 17, 2007, the parties notified me of their inability

---

[4] August 5, 2007 would have been the one year anniversary date, however that fell on a Sunday.

to resolve the matter sometime during the first week in September 2007. Counsel for Petitioner therefore filed a memorandum brief seeking an evidentiary hearing and permission to amend the petition. *See Docs.* 11-13. By then the statute of limitations had run.

In his *pro se* petition, Defendant asserted that counsel was ineffective for: failing to file an appeal; failing to argue at sentencing for a downward departure based on his stipulation to immediate deportation; and similarly failing to argue for a downward departure based on the "fast-track-program." *See Doc. 7* at 2; *Doc. 1* at 5; *Doc. 2* at 2. Counsel wanted to amend by recasting the ineffectiveness at sentencing claims to include failure to argue that the Virginia conviction for "unlawful wounding" did not qualify as a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). Had it not been so characterized, Defendant would have faced a 10-16 months sentencing range, rather than 46-57. *See Doc. 14* at 11, 14.

The United States argued that the request to amend was untimely because it came after the statute of limitations had run and that the "relation-back" doctrine of FED. R. CIV. P. 15 was inapplicable. *See Doc. 15* at 3-6; *see also Doc. 16* at 3. Although I agreed with the United States on its "relation-back" argument, I found that the Tenth Circuit holds an equitable tolling inquiry is a separate inquiry. Here Petitioner filed with plenty of time to spare and the delay that caused the statute to

run was not caused by him or his attorney. Rather, the delay arose from the United States' requested extension, the time it took this Court to review and resolve the initial matters, and this Court's desire that the parties try to resolve the matter informally first, before requesting additional court intervention. I explained this ruling in detail at my status conference hearing and at the outset of the evidentiary hearing. *See Doc. 17* at 2; *FTR/Thursday10-25-07/MolzenCR/1:34p.m.-5:05p.m.* (hereinafter "*FTR*") (discussion commencing approximately 1:40 p.m.).

Having thoroughly reviewed the United States' arguments that I reconsider my equitable tolling ruling allowing amendment to the petition, I am unconvinced that my ruling was in error. *See Doc. 14* at 9-15; *Doc. 15* at 3-6; *Doc. 18* at 1-6. Thus, I reiterate my recommendation that the presiding judge grant Defendant's request to amend to recast the ineffectiveness at sentencing issues.

*Appropriate Habeas Relief Differs For The Two Claims*

As I mentioned in my earlier ruling and explained at the evidentiary hearing, habeas relief is tailored to remedy the constitutional violation at issue. Thus, the appropriate habeas relief available for the sentencing claim would be a new sentencing hearing, while the appropriate relief for a failure to file an appeal is enabling the Defendant to take a delayed one. *See Doc. 17* at 1-2; FTR (starting approximately at 1:50 p.m.).

The distinction is that with a new sentencing hearing, counsel could raise any issues related to sentencing, and Judge Parker could reconsider the sentence to impose.  Conversely, with the delayed appeal remedy, the judge simply performs the ministerial task of vacating and reentering the judgment and sentence, so that the time to file an appeal will run anew.  For those same reasons and authorities previously cited, I continue to recommend that Defendant not be granted a new sentencing hearing for a failure to file an appeal violation and the Court deny Defendant's request for reconsideration of that issue.  *See Doc. 14* at 9; *Doc. 20* at 2; *see also United States v. Gentry,* 429 F. Supp. 2d 806 (W.D. La. 2006) (same bifurcated treatment of such claims).

### *Counsel Was Not Ineffective For Failing To Argue The Virginia Conviction Should Not Qualify As A "Crime of Violence"*

The two-prong test of constitutionally deficient conduct and prejudice from *Strickland v. Washington,* 466 U.S. 668 (1984) governs Defendant's claim that his attorney was ineffective during sentencing.  Translating the *Strickland* test to the context here, Defendant must show <u>both</u> that failing to argue the Virginia unlawful wounding statute should not qualify as a crime of violence was constitutionally deficient and that, if he had, the argument would have prevailed.  Establishing both prongs is mandatory for habeas relief to issue.  *E.g., id.* at 689, 697, 700.

Defendant has not cited, nor have I found, any decision issued prior to Defendant's sentencing that holds the Virginia statute, either as written or as applied here, is not a crime of violence for U.S.S.G. § 2L1.2(b)(1)(A)(ii) purposes. I did locate one decision that so held under U.S.S.G. § 4B1.2, however. *See Taylor v. United States,* 2005 WL 1950148 (W.D.Va. 2005). Yet it is immaterial whether I or habeas counsel would have made a different choice had we been appointed counsel for Defendant, and no expert testimony would aid the Court in this regard.

Instead, the inquiry here is highly deferential.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689. Even if Gaspar-Perez is correct that the Virginia "unlawful wounding" statute does not categorically constitute a crime of violence, it would be necessary to determine whether he had necessarily pled guilty to conduct constituting a crime

of violence. *Perez-Vargas*, 414 F.3d 1282, 1284(10th Cir. 2005). To do that, the sentencing court would have had to look at "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant. . ., or to some comparable judicial record of this information." *Id.* (citation omitted).

Trial counsel understood that Defendant had stabbed his wife and it was this act that formed the basis for the Virginia conviction. Indeed, the Virginia defense counsel stated at the pleas hearing that he had no additions or corrections to the prosecutor's following statement of the evidence:

> Mr. Gaspar came home that night very intoxicated. The Commonwealth's evidence would show that he accused her of cheating on him. She indicated that she could not be with him anymore. She started to leave. He grabbed a fork and started to stab her and continued to do so when she picked up the phone to call the police. He knocked the phone from her hand and stabbed her in the left arm with the fork, and then stabbed her in the left hand with the fork when she put her hands up to defend herself.

*Transcript*, Circuit Court for the City of Winchester, Virginia, CR05001445-00 at 13-14.

Thus, this was not a situation where counsel was unaware of the potential issue or the controlling caselaw at the time, or was unaware that the language of the Virginia statute potentially made such an argument viable. Counsel testified

that he considered all of this and advised that this argument not be raised because he did not think it would prevail and could undermine the strength his other potential arguments for leniency.  Instead, he advised a different strategy that, had it been successful, would have lowered the applicable guideline range even further – from 4 to 10 months of imprisonment.  *See United States v. Perez,* CR 06-944 JP (Doc. 16 at 9).  Given the deference due such decisions, I cannot conclude that this sentencing argument strategy was "outside the range of professionally reasonable judgment."  466 U.S. at 699.

*Counsel Was Ineffective Under Flores-Ortega*

The Supreme Court's decision in *Roe v. Flores-Ortega,* 528 U.S. 470, 484 (2000), governs ineffective assistance of counsel claims for failure to file an appeal. *See also, e.g., United States v. Garrett,* 402 F.3d 1262, 1267 (10th Cir. 2005); *United States v. Snitz,* 342 F.3d 1154, 1159 (10th Cir. 2003).  It is well-settled that the decision to appeal rests with the Defendant, not his attorney:  "the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."  *Jones v. Barnes,* 463 U.S. 745, 751 (1983).

The *Flores-Ortega* decision addresses two situations: first, where a defendant has made clear to his attorney that he wants to appeal by instructing the attorney

to do so, and second, where the client's wishes have not been made known to the attorney. This case presents the second situation because there is no dispute that Defendant never told his attorney that he wanted to appeal.[5]

Counsel testified that he informed his client about the appeal process when they discussed the potential sentencing strategies and opted to discard the arguments relating to the Virginia "unlawful wounding" conviction. It is undisputed that this was the last time Defendant's right to an appeal was discussed. After the sentencing at which the judge rejected the alternative grounds for a downward departure, counsel never talked to his client again. Thus, this is a "consultation" case where counsel in fact talked to his client about an appeal.

However, "consultation" as defined by the Supreme Court has two components:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has

---

[5] The *pro se* petition and its memorandum in support appear to take the position that Defendant instructed his attorney to appeal, but both of those sources cite as evidence of this instruction the assertion that Judge Parker asked Defendant if he wanted to appeal and Defendant said "yes." The record did not bear out this characterization of the conversation between Defendant and Judge Parker during sentencing. Rather, Judge Parker only asked if Defendant "understood" his right to appeal. *See Doc. 7* at 3-4. However, Defendant's initial declaration is consistent with his testimony at the evidentiary hearing – he tried to get in touch with his attorney after sentencing regarding the appeal. *See Doc. 2* at 6.

> performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal, *and* making a reasonable effort to discover the defendant's wishes.

528 U.S. at 478 (emphasis added).

It is the second portion of consultation that is at issue here, and it is undisputed that Defendant's attorney did not talk to him after sentencing. A number of decisions have found that by not ascertaining <u>after</u> the sentence is imposed whether the client wants to appeal, the attorney's conduct is unreasonable.[6]

---

[6] *See, e.g., Del Valle v. United States,* 497 F. Supp. 2d 346, 350 (D.R.I. 2007) ("The undisputed testimony shows that Del Valle reasonably demonstrated to his counsel that he was interested in appealing. At a meeting with counsel prior to sentencing, Del Valle instructed counsel to challenge the firearm enhancement during the sentencing hearing. At that time, discussions were had regarding the possibility of an appeal if the Court made an unfavorable determination at sentencing regarding the firearm enhancement. No decision whether to appeal was made at that time because the sentencing hearing had not yet occurred and the outcome was, at best, speculative. Rather than consulting with Del Valle after the sentencing hearing on the viability of any appeal, counsel abandoned his client. Counsel made no effort whatsoever to discover Del Valle's wishes regarding an appeal after sentencing, knowing that Del Valle expressed a strong objection to the firearm enhancement. Del Valle and his wife, on the other hand, made numerous efforts to contact counsel. The undisputed testimony indicates that both Del Valle and his wife contacted counsel's law office during the ten day period in which an appeal could have been filed. Counsel admitted that his office received at least some of the phone calls made by Del Valle and his wife, yet counsel never ascertained the purpose of the calls. Such a simple step as driving to the Wyatt facility and meeting with Del Valle would have revealed Del Valle's desire to appeal, and would have eliminated the need for this entire proceeding."); *Vallecillo v. United States,* 2007 WL 2479720 (M.D. Fla. 2007) ("Vallecillo testified

I find the rationale of these decisions persuasive, particularly under the facts here. Defendant pled guilty without a written agreement which thereby preserved his right to appeal. Moreover, counsel specifically talked to his client about appeals and sentencing strategy, but did not talk to his client at any time after the sentencing after losing the sentencing arguments. Gaspar-Perez testified that he attempted to contact his attorney after the sentencing hearing to instruct him to file an appeal but was informed that counsel was unavailable because he was out of the country. This was corroborated by counsel's testimony that he was indeed out of the country during the relevant period.

Wherefore,

---

and Attorney Castillo confirmed that, after the May 24, 2006 resentencing, Castillo never visited Vallecillo in jail to discuss an appeal. There was no evidence that Attorney Castillo made a reasonable effort to ascertain what Vallecillo's wishes were as to an appeal. Attorney Castillo did not take the necessary steps to confirm or deny whether Vallecillo wanted to appeal. Two factors support a finding that Vallecillo, as a rational defendant, would have wanted to appeal. First, Vallecillo appealed the previous sentence and prevailed on a *Blakeley v. Washington,* 542 U.S. 296 (2004) issue. As a result of that appeal, he was resentenced. Vallecillo could rationally have believed that he would prevail on the second appeal. Second, Vallecillo was not happy with the sentence of 135 months he received at the second sentencing and testified that he had hoped for a shorter sentence."); *Miller v. United States,* 150 F. Supp. 2d 871, 873 (E.D.N.C. 2001) (in adopting proposed findings to allow delayed appeal, district judge "acknowledges that the United States Court of Appeals for the Fourth Circuit strongly suggests that substantive and detailed advice about appeal should be given *after* sentencing. *United States v. Witherspoon,* 231 F.3d 923 (4th Cir. 2000). It is the finding of the court that from the time petitioner was sentenced, petitioner was not consulted about his rights on appeal nor did either of his attorneys take any action to discover petitioner's wishes concerning an appeal.") (emphasis added).

IT IS HEREBY RECOMMENDED AS FOLLOWS:

1. Defendant's request to amend to recast the ineffectiveness at sentencing issues be granted, and the United States' request for reconsideration of that ruling be denied. *See Doc. 14* at 9-15; *Doc. 15* at 3-6; *Doc. 18* at 1-6;

2. Petitioner's ineffectiveness claim regarding sentencing strategies be denied;

3. Petitioner's ineffectiveness claim regarding failure to appeal be granted;

4. Defendant not be granted a new sentencing hearing for a failure to file an appeal violation and the Court deny Defendant's request for reconsideration of the issue. *See Doc. 14* at 9; *Doc. 20* at 2;

5. As the appropriate habeas remedy for failure to appeal, the Court vacate and reenter the judgment and sentence in *United States v. Perez,* CR 06-944 JP so that the time to appeal will run anew; and

6. That counsel for Defendant timely perfect the appeal and, if possible, also represent Defendant in that appeal.

> THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE